IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHY TOOZE-AGUIRRE, and DAVID A. AGUIRRE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>RACHEL STEVENS-VANGORDER, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE JOINT VENTURES 1-10, DOE CORPORA-TIONS 1-10, and DOE ENTITIES 1-10,<br><br>        Defendants. | Civil No. 04-00619 BMK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## I.
## INTRODUCTION

This claim arises from injuries suffered by Plaintiff KATHY TOOZE-AGUIRRE ("KATHY") after her 1997 Nissan Maxima was hit from the rear by a Jeep Wrangler driven by Defendant RACHEL STEVENS-VANGORDER ("STEVENS-VANGORDER") while KATHY was stopped in traffic on Kalanianaole Highway on March 26, 2003. Defendant STEVENS-VANGORDER was visiting Honolulu from her residence in Oregon at the time of the collision.

According to Defendant STEVENS-VANGORDER's December 2, 2005 response to Plaintiffs' First Request For Admissions and Request for Answers to Interrogatories to Defendant STEVENS-VANGORDER, she was lost, going 40 miles per hour and reading a road map when she hit KATHY's vehicle.

-5-

> If #1 means the car I was driving, and #2 means the car driven by Plaintiff [KATHY], I admit that:
>
> 1. I informed State Farm of the Subject Collision after it occurred
>
> 2. I informed State Farm that I was on the highway
>
> 3. I informed State Farm that I was lost
>
> 4. I informed State Farm that I was looking, alternately, between a map and at the road
>
> 5. I was traveling approximately 40 mph before the Subject Collision
>
> 6. The vehicle I was driving bumped into the rear of the vehicle driven by Plaintiff [KATHY]

A true and correct copy of Pages 64 and 65 of Defendant STEVENS-VANGORDER'S First Amended Response to Plaintiffs' First Request For Admissions and Request for Answers to Interrogatories to Defendant STEVENS-VANGORDER is attached to and made a part hereof as Exhibit "A".

As a result of the collision, KATHY sustained serious injuries to her neck and back which have been verified through objective diagnostic testing, including MRI and EMG/NCV examination.

## II.
## ARGUMENT

A. **DOCTOR SCOGGIN DOES NOT MEET THE PREREQUISITES TO TESTIFY AS AN EXPERT ON PSYCHOLOGICAL OR PSYCHO-SOCIAL ISSUES AT TRIAL.**

As far as Plaintiffs are aware, Dr. Scoggin is an orthopedic surgeon. Plaintiffs believe he will be called as an expert in that medical specialty. There is no evidence that he has conducted any psychological or psychiatric testing on KATHY. Nor is there any evidence that he competent to do so. Plaintiffs aware that he holds himself out as an expert in any such field or been qualified in any court as such an expert.

Rule 702 of the Federal Rules of Evidence ("FRE") provides the following instructions in determining the admissibility of expert testimony.

> Rule 702  Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule lays out a multi-part test to determine whether an expert may offer opinions in any particular field of expertise. Given the foregoing test, Dr. Scoggin does not possess the requisite "knowledge, skill, experience, training or education" to testify in the field of psychiatry.

Dr. Scoggin does not hold himself out to be an expert in the field of psychiatry. There is no basis for Dr. Scoggin to speculate about real or imagined psychiatric or psychological

factors for Plaintiff KATHY's symptoms or complaints. He is not qualified in the field of psychiatry to render such an opinion.

Reliability of an expert's opinion depends upon the expert's "mode of analysis", State v. Maelaga, 80 Haw. 172, 182, 907 P.2d 758 (1995), and the existence of a "sound factual foundation". Ditto v. McCurdy, 86 Haw. 93, 108, 947 P.2d 961 (App. 1997), *rev'd on other grounds*, 86 Haw. 84, 947 P.2d 952 (1997).

If the proffer of an expert's specialized knowledge is based upon a mode of analysis that lacks trustworthiness, the trial court should disallow the expert's testimony. State v. Maelaga, *supra*, at 182.

Dr. Scoggin does not possess the requisite "knowledge, skill, experience, training or education" to testify in the fields of psychiatry or psychology. Nor is he able to satisfy the general standard laid out in State v. Kim, State v. Maelaga, or Ditto v. McCurdy, because his opinions regarding psychological or psychosocial factors are not based on a "sound factual foundation", nor are they the "product of an explicable and reliable system of analysis" since he did no psychological testing in this case and he is obviously not a qualified psychologist or psychiatrist.

Dr. Scoggin does not hold himself out to be an expert in the field of psychology or psychiatry. He may say his

-8-

clinical practice touches upon on such fields. However, that does not meet the standard of Rule 702. Dr. Scoggin does not and cannot represent that he is licensed to practice psychology in the State of Hawaii. Nor does he hold himself out to be a licensed psychiatrist. Accordingly, he is not competent under Rule 702 to speculate concerning psychological or psychiatric issues allegedly pertaining to Plaintiff KATHY when he lacks any specific education, training or expertise in such fields. His opinions amount to nothing more than speculation which is specifically precluded under FRE Rule 702.

In addition, Dr. Scoggin cannot speculate about any real or imagined psychological or psychosocial basis for Plaintiff KATHY's symptoms or complaints without some proof that such opinions are the product of reliable scientific or medical analysis. He is simply not qualified in the field of psychiatry or psychology to render such opinions and he conducted absolutely no testing to verify the existence of any such conditions. See, State v. Montalbo, 73 Haw. 130, 138-139, 828 P.2d 1274 (1992).

> We believe the standard articulated by this court in **Kim** remains the proper standard to apply to the admission of scientific evidence. Although general acceptance in the scientific field is highly probative of reliability of a scientific procedure, there are other indicators of suitability for admission at trial. Examination of either the principle under- lying scientific evidence, or of the procedure itself, may be a sufficient basis upon which to admit or deny evidence at trial,

>depending upon the procedure as well as upon the relevance of the evidence to issues at trial. Moreover, admission of scientific evidence is not solely a question of reliability. *See,* **McCormick,** *supra,* § 202 at 604 (question is whether scientific evidence on balance will assist the jury). A court must consider whether the evidence presented at trial would add to the common knowledge of the jury, would usurp the jury's function as a finder of fact, or would be likely to confuse and prejudice the jury. **These determinations may only be made on examination of the scientific procedure itself.** *See,* **McCormick,** *supra,* § 203 at 609 . . . [Emphasis added.]
>
> Montalbo, 73 Haw. at 138-139.

To allow Dr. Scoggin to ascribe off the cuff psychological motives for the nature or severity of Plaintiff KATHY's objective injuries, including a herniated disc in her neck, without **any** foundational proof of the scientific basis for such opinions or the scientific procedures he employed to arrive at such opinions, would clearly violate the test laid out in Rule 702 and the applicable case law. State v. Kim, *supra,* State v. Maelaga, *supra,* and State v. Montalbo, *supra.*

    B.   DR. SCOGGIN SHOULD NOT BE ALLOWED TO SPECULATE CONCERNING ALLEGED PSYCHOLOGICAL OR PSYCHOSOCIAL FACTORS AS A BACK DOOR WAY OF ATTACKING PLAINTIFF'S CREDIBILITY.

As noted above, Dr. Scoggin, an orthopedic surgeon, was retained to perform a physical examination of Plaintiff KATHY not to psychoanalyze her mental condition. He is not allowed to offer speculative opinions concerning Plaintiff KATHY's alleged

mental condition as a way of attacking her credibility over the nature and extent of her objective injuries.

Merely telling the jury what result to reach in the manner of the oath-helpers of an earlier day is not a permissible function of an expert. Bowman, *Hawaii Rules of Evidence Manual*, § 702-2B at 421 (2d ed. 1998). Where the effect of the expert's opinion goes directly to the truthfulness of the complaining witness, such testimony invades the province of the jury. State v. Batangan, 71 Haw. 552, 559, 799 P.2d 48 (1990).

    C.   ANY TESTIMONY CONCERNING SECONDARY GAIN IS INADMISSIBLE AT TRIAL.

The mere inference, without any expert scientific, medical or psychological foundation, that KATHY is motivated by other psychological or psychosocial factors is patently prejudicial. Even assuming Defendant STEVENS-VANGORDER is able to produce some evidence of such factors at play in this case, its probative weight is far outweighed by its prejudicial nature.

In Rodgers v. CWR Construction, Inc., 343 Ark. 126, 33 S.W.3d 506, 511 (2000) the Arkansas Supreme Court held that the probative value of a defense expert's testimony regarding "secondary gain" was far outweighed by its highly prejudicial effect. Therefore, such testimony should have been excluded by the trial court under Ark. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury.

-11-

*Id.* The court further held that such testimony from the defense medical expert should have been excluded on relevance grounds under Ark. R. Evid. 401 as well since the defense expert admitted he was not saying that the plaintiff was ". . . malingering or implying that [the plaintiff] had secondary gain . . ." *Id.*

### III.
### CONCLUSION

Plaintiffs respectfully request that the Motion In Limine #4 Barring Defendant RACHEL STEVENS-VANGORDER'S Medical Expert From Mentioning or Attributing Plaintiff Kathy Tooze-Aguirre's Condition or Symptoms In Whole or In Part to Secondary Gain be granted and that Defendant STEVENS-VANGORDER's DME expert, Dr. Scoggin, be precluded from testifying about or attributing Plaintiff KATHY's symptoms to psychological factors such as secondary gain.

DATED: Honolulu, Hawaii, _____JAN 10 2006_____.

_____
BRUCE B. KIM
Attorney for Plaintiffs