LEFT SIDE

*Law Offices of*
**BRUCE B. KIM**

January 27, 2006

**VIA FACSIMILE & REGULAR MAIL**

Randall Y. S. Chung, Esq.
Matsui Chung Sumida & Tsuchiyama
Suite 1400, Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

>       Re: Tooze-Aguirre, et al. v. Stevens-Vangorder
>           Civil No. 04-00619 BMK

Dear Mr. Chung:

      Pursuant to my conversation this morning with Judge Kurren's law clerk and Melanie Matsui, Esq. of your office, I am enclosing a copy of a February 11, 2004 letter from Dr. Scoggin to Wesley Ching, Esq.

      As you can see from the enclosed letter, Dr. Scoggin represented to Mr. Ching that he performed "130 to 140 IME's per year" at the time he wrote the letter based on an average "3 IME's a week". Dr. Scoggin further represented that all this IME work was done in connection with "personal injury claims". I am having a hard time squaring the foregoing representations with the six cases listed by Dr. Scoggin in your January 25, 2006 fax.

      As pointed out during this morning's conversation, I did cite a 1999 decision from the U.S. District Court for the Northern District of Oklahoma discussing the type of information envisioned by the requirement to disclose ". . . a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Palmer v. Rhodes Machinery, 187 F.R.D. 653 (N.D. Okla. 1999).

> . . . The expert did provide a partial list of prior deposition testimony.
> The list was for less than three years (the Rule requires four), and
> did not provide complete information (no identification of the "cases"
> was provided although some attorneys names were listed). [referencing
> the facts of Nguyen v. IBP, Inc., 162 F.R.D. 675 (D. Kan. 1995).]

Palmer, 187 F.R.D. at 655.

Suite 206 • One Kapiolani Building • 600 Kapiolani Boulevard • Honolulu, Hawaii 96813
Telephone (808) 538-7134 • Facsimile (808) 538-7136

Randall Y. S. Chung, Esq.
January 27, 2006
Page Two


The Palmer court flatly rejected defendant's counsel's suggestion that his trial expert's complete failure to provide the requisite list of cases was "harmless".

> Defendant's counsel asserts that the failure to provide the list is harmless, while arguing, at the same time, that Plaintiff's real motivation to obtain the list is to share it with other Plaintiff's lawyers who have wanted the illusive list for years. The Court questions how the failure to provide such coveted information can be harmless. From the list of cases Plaintiff can determine the number of independent medical examinations performed by Dr. Framjee, the percentage of Dr. Framjee's work which is for plaintiffs or defendants, and what Dr. Framjee's yearly income is from such examinations. Plaintiff's counsel wishes to contact attorneys in other cases in which Dr. Framjee's deposition was taken. The Court concludes that the failure to disclose the information is not 'harmless' as contemplated by the rules.
>
> Palmer, 187 F.R.D. at 657.

The Palmer opinion further held that the adverse party should not be placed at a disadvantage or be deprived of the full benefits of Rule 26 by the selection of an expert who cannot or will not make the required disclosures. Palmer, 187 F.R.D. at 657.

> The selection and retention of an expert witness is within the control of the party employing the expert. To the extent that there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining the expert.
>
> *Id.*

Randall Y. S. Chung, Esq.
January 27, 2006
Page Three

       We suggested this morning that the disclosure requirements are intended to be meaningful. We will renew our objections to Dr. Scoggin before he testifies at trial. Thank you for your attention to this matter.

                                         Very truly yours,

                                         BRUCE B. KIM

BBK/jj

Enclosure

cc: The Hon. Barry M. Kurren (w/enc.)
    Janice P. Kim, Esq. (w/enc.)

FEB-12-04   12:09   FROM-Fukunaga Matayoshi Hershey & Ching   +1-808-531-76   T-550   P.003/007   F-802
02/13/2004   08:39   8085211173                                                              PAGE  01

Specialties
General Medicine
Internal Medicine
Occupational Medicine
Orthopaedics
Sports Medicine

Services
Arthroscopic Surgery
General Orthopaedic Surgery
Independent Medical Evaluations
Independent Record Reviews
Record Summarization
Case Merit Analysis
Expert Testimony
Impairment Ratings



# HONOLULU SPORTS MEDICAL CLINIC, INC.

Honolulu Club Building
932 Ward Ave. Suite 460
Honolulu, Hawaii 96814
Tel (808) 521-6554
Fax (808) 521-1173

CHET NIERENBERG, M.D.
ROBERT SMITH, M.D.
PETER DIAMOND, M.D.
JAMES SCOGGIN III, M.D.
CLARISSA BURKERT, M.D.
GEORGE SEBERG, M.D.
JON H. SCARPINO, M.D.

February 11, 2004

Wesley Ching
Fukunaga Matayoshi Hershey & Ching
A Limited Liability Partnership
Attorneys at Law
Davies Pacific Center
841 Bishop Street, Suite 1200
Honolulu, Hawai'i 96813-3908

RE:  ▬▬▬▬▬▬▬▬ v. Hartford Underwriters Insurance Company
     Underinsured Motorist Arbitration

Dear Mr. Ching:

In regard to your request for additional information, I have discussed the issue with Office Manager, Ana Bennett, Clinic Administrator, Carol Donovan, and Medical Director, Chet Nierenberg, M.D.

I would also direct you to correspondence from Medical Director Chet Nierenberg, M.D. dated 1/8/04 in a letter to all parties involved in this case (Mendonca, Ching, Crumpton). "Also, as stated by Mr. Crumpton, there will be no other restrictions placed on Dr. Scoggin and he will conduct the Independent Medial Examination according to his usual protocols and procedures, without restriction. If there are any objections, please notify any of our staff members at the Honolulu Sports Medical Clinic prior to 12 p.m. on Friday, January 9, 2004." It was not indicated to me that the examination would be conditional upon answering these additional questions.

FEB-12-04  12:10  FROM-Fukunaga Matayoshi Hershey & Ching  +1-808-531-    T-550  P.004/007  F-802
02/13/2004  08:39  8085211173                                                      PAGE  02

Fukunaga Matayoshi Hershey & Ching
February 11, 2004
Page 2

RE:  ███████████ v. Hartford Underwriters Insurance Company
     Underinsured Motorist Arbitration

Therefore, I do not feel that I should be required to respond to these additional questions. However, in the interest of cooperation I would offer the following responses:

1. *What is the approximate number of medical reports you have done (either as treating or consulting physician or as an IME) for personal injury claims in 2002 and 2003?*

   I do not have the exact number of IME's or medical reports for personal injury claims that I have performed in 2002 or 2003. I would estimate that I averaged approximately 3 IME's a week. Multiplying this by approximately 48 weeks that I worked during each of these two years I would estimate that I did approximately 130 to 140 IME's per year. (Note: these are estimates only as I do not have the precise numbers available.)

2. *What is the estimated percentage of those reports you have done for claimants and the estimated percentage of those you have done for insurers/defendants?*

   It has always been my policy that I will do IME's for any interested party, whether the request comes on behalf of a claimant or the insured party. Although I welcome IME's from both sources, it is true that insurers or defense attorneys refer the majority of these cases. The content of IME's reflects the facts of each case, taken on an individual basis, and are not influenced by the source of payment.

3. *What is the estimated amount of income and proportion of your income from these reports?*

   As an Orthopedic Surgeon, the majority of my income is derived from clinical practice. As a practicing Orthopedic Surgeon, I have taken orthopedic trauma call every fourth night and every fourth weekend at Straub Hospital for approximately 12 years. My most recent 24-hour call period ended at 7 a.m. this morning. The majority of my practice consists of caring for individuals with orthopedic conditions. This includes the care of patients through all phases of orthopedic trauma, including motor vehicle accidents and workers' compensation injuries. I do not have the precise figures, but I estimate that significantly more than half of my income derives from the clinical practice of Orthopedic Surgery; substantially less than half comes from IME's.

FEB-12-04  12:10  FROM-Fukun(   )  ayoshi Hershey & Ching  +1-808-531-7(  )  T-550  P.005/007  F-602
02/13/2004  08:39  8085211173                                                              PAGE  03

Fukunaga Matayoshi Hershey & Ching
February 11, 2004
Page 3

RE: ███████████ v. Hartford Underwriters Insurance Company
    Underinsured Motorist Arbitration

4. *What is the rate and amount of your fee for your IME and any testimony in this arbitration?*

My Fee Schedule can be obtained form the Honolulu Sports Medical Clinic, Inc. business office. This Fee Schedule is not dependent on which "side" engages my services. Most importantly the fees for my Independent Medical Evaluations are dependent on the time I spend with each case. In other words, the person or office that engages my services is charged for my time, not for my opinion.

Please feel free to contact me if you have any further questions.

Sincerely yours,

James F. Scoggin, III, M.D.
Board Certified,
American Board of Orthopedic Surgery
American Board of Independent Medical Examiners

JFS:ab

Encl.  Fee Schedule 2004

Cc:  Charles Crumpton Esq.