IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHY TOOZE-AGUIRRE, ) | CIVIL NO. 04 00619 BMK |
| ) | |
| Plaintiff, ) | DEFENDANT RACHAEL |
| ) | ROXXANN WILKS' |
| vs. ) | MEMORANDUM IN SUPPORT OF |
| ) | HER MOTION FOR REMITTITUR |
| RACHEL STEVENS-VANGORDER, ) | OR, IN THE ALTERNATIVE, FOR |
| JOHN DOES 1-10, JANE DOES 1-10, ) | NEW TRIAL |
| DOE PARTNERSHIPS 1-10, DOE ) | |
| JOINT VENTURES 1-10, DOE ) | |
| CORPORATIONS 1-10, and DOE ) | |
| ENTITIES 1-10, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

DEFENDANT RACHAEL ROXXANN WILKS'
MEMORANDUM IN SUPPORT OF HER MOTION FOR
REMITTITUR OR, IN THE ALTERNATIVE, FOR NEW TRIAL

I.   INTRODUCTION/SUMMARY OF ARGUMENT:

This action arises out of a motor vehicle accident, involving vehicles driven by Defendant RACHAEL ROXXANN WILKS (incorrectly named as RACHEL STEVENS-VANGORDER) (hereinafter "Defendant") and by Plaintiff KATHY TOOZE-AGUIRRE (hereinafter "Plaintiff") occurring on March 26, 2003 (hereinafter "Subject Accident").

On February 3, 2006, in her final arguments to the jury during trial in this matter, Plaintiff's counsel suggested an award of approximately $14,000 in

medical special damages. She represented that this was approximately one-half of the total medical bills in evidence, thereby conceding and admitting that Plaintiff's entitlement for medical special damages was limited to $14,000.00:

> "But if you looked that there was two injuries, remember, to the neck and the back, then, if we're just looking at the neck, then half of those medicals, just take half of them for the neck, and that's $14,000. So put that figure on the side because that's just the medicals, and then look for the economic loss."

Tr. 02/03/2006 at page 24, lines 15-20, a true copy of which is attached hereto as Exhibit "A" and incorporated by reference herein.

She also argued that Plaintiff was entitled to less than one-half of Dr. Thomas Loudat's $201,000.00 estimate for past and future lost wages.

> "So, we have the economic loss. It was $201,000.00. We're talking only about the neck pain and the radiculopathy; so I split it so that it's one half of that economic loss, which is one hundred five hundred - - anyway, it's what it is up there. And then I applied my gut on what I though May 2004 and the 2005 did, and I deducted that 10 percent.

Tr. 02/03/2006 at page 26, lines 10-16, a true copy of which is attached hereto as Exhibit "A" and incorporated by reference herein.

On February 3, 2006, the jury returned a special verdict in the amount of $61,000 in special damages. See Special Verdict Form, a true copy of which is attached hereto as Exhibit "B" and incorporated by reference herein. Inasmuch as

Plaintiff's claim was limited to $14,000.00 in medical special damages during final argument, the jury's award of special damages necessarily included $47,000 in lost wages special damages.

According to the "Summary of Economic Losses to Kathy Tooze-Aguirre", included in Dr. Loudat's May 9, 2005 report, Plaintiff's wage loss to January 1, 2005 was $15,548.00. (See Exhibit "C", attached hereto.)

Giving Plaintiff the benefit of the doubt[1], and without waiving any claims, defenses, or objections, this Defendant submits that at least $31,452.00[2], constituted an award of future lost wages special damages.

Following the verdict, it was learned that the jury did not have a crucial piece of evidence as to the future lost wages special damages issue, namely Plaintiff's own personal composition book, Plaintiff's Trial Exhibit No. 58, a copy of which is attached hereto as Exhibit "D" and incorporated by reference herein, in which Plaintiff admitted and detailed how her wages actually <u>increased</u> after the Subject Accident.

---

[1] Although Dr. Loudat's calculation for past wage loss was made through January 1, 2005, this Defendant's position is that Plaintiff sustained no more than 6 months of wage loss after the subject accident.

[2] 
| $61,000.00 | Special Damages Award |
| - $14,000.00 | Medical Specials |
| - $15,548.00 | Past Wage Loss |
| =**$31,452.00** | **Future Wage Loss** |

Comparing the entries for September, October, November, and December 2002, to the corresponding months in 2003 clearly demonstrate that Plaintiff earned more, month to month, after the subject accident, than before. (See Exhibit "D")

As a result, the manifest weight of the evidence conclusively established that Plaintiff did not incur any lost wages special damages in this case.

As more fully set forth below, Defendant is entitled to an order granting a new trial unless Plaintiff agrees to a remittitur of the jury's award of special damages in the amount of THIRTY ONE THOUSAND FOUR HUNDRED FIFTY TWO AND NO/100 DOLLARS ($31,452.00), reducing said award from $61,000.00 to $29,548.00, on the basis that the jury's award of future lost wages special damages in this case is based on the prejudicially erroneous omission of Plaintiff's Trial Exhibit No. 58 from the jury room during the jury deliberations in this case, and/or is clearly not supported by the evidence and/or is only based on speculation or guesswork.

II.  ARGUMENT:

FRCP Rule 59 authorizes motions for new trial within ten (10) days after the entry of judgment. The United States Court of Appeals for the Ninth Circuit has held that a new trial may be in order where an award of damages is: (1) grossly excessive or monstrous, (2) clearly not supported by the evidence, or (3)

4

only based on speculation or guess work, and the award of damages gives rise to an inference that "passion and prejudice" tainted the jury's finding on liability issues. Snyder v. Freight, Construction, General Drivers, Warehousemen And Helpers, Local No. 287, 175 F.3d 680, 689 (9th Cir. 1999) (citations omitted). In the absence of such "passion and prejudice", remittitur is an appropriate remedy to reduce an excessive verdict of damages. Id.

Where excessive damages are awarded, a district court has two alternatives, (1) to either grant a motion for new trial or (2) condition denial of that motion for new trial upon acceptance of remittitur/reduction by the prevailing party. Oltz v. St. Peter's Community Hospital, 861 F.2d 1440, 1452 (9th Cir. 1988); see also Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996)

In Roberts v. College of the Desert, 870 F.2d 1411, 1417 (9th Cir. 1989), the United States Court of Appeals for the Ninth Circuit applied the foregoing standards and held that a district court possessed the discretion to order a new trial unless the plaintiff accepted a remittitur of that portion of a jury's verdict that was awarded for "destruction of career" because there was no specific evidence to prove that fact. The Court went on to hold that a district court did not possess the discretion to reinstate that portion after having determined it to be excessive.

In the instant case, the Court should grant a new trial, unless Plaintiff accepts a reduction in the jury's special damages award for that portion which is attributable to future lost wages, for reasons including the following:

> A.  The Jury's Verdict was Prejudiced by the Omission of Plaintiff's Exhibit No. 58 from the Jury Room.

Jury Instruction No. 17 specifically provided:

> During this trial, items were received in evidence as exhibits. These exhibits will be sent into the jury room with you when you begin to deliberate.

(Exhibit "E").

Therefore, it was reasonable for the jurors to expect that all admitted evidence had been provided to them.

Further, as a general rule, exhibits that have been admitted into evidence should appropriately be transmitted to the jury room for jury deliberations, particularly where they are relevant to a key issue. See Westinghouse Electric Corp. v. CX Processing Laboratories, 523 F.2d 668, 677-78 (9th Cir. 1975); Caton v. Hardamon, 496 F.2d 6, 8 (7th Cir. 1974); Pierce v. Ramsey Winch Co., 753 F.2d 416, 431 (5th Cir. 1985). Thus, it is reversible error to refuse to allow a relevant exhibit that has been admitted into evidence from going into the jury room. See, e.g., Rockland Bleach & Dye Works, Inc. v. H.J. Williams Corp., 242 Md. 375, 390, 219 A.2d 48, 56 (1966) (reversing verdict and remanding case for new trial); Town East Ford Sales, Inc. v. Gray, 730 S.W.2d

6

796, 808 (Texas Ct. App. 1987). Since the effect is the same, the same is true for an unexplained failure of an exhibit that has been admitted into evidence to reach the jury room. See Sterba v. Jay, 249 Kan. 270, 284, 816 P.2d 379, 389 (1991) (reversing and remanding case for new trial); Commonwealth v. Marks, 12 Mass. Ct. App. 511, 518-22, 426 N.E.2d 1172, 1177-78 (1981) (holding that it was an abuse of discretion to deny a motion for new trial under such circumstances).

Under Hawai'i law, a plaintiff seeking lost wages bears the burden of proving the loss with reasonable certainty and cannot rely upon an unsupported expectation that is inconsistent with prior performance. Plaintiff bears the burden of establishing lost earnings with reasonable certainty, and an award for lost earnings cannot be based upon mere speculation or guesswork. Tanuvasa v. City and County of Honolulu, 2 Hawai'i App. 102, 115-17, 626 P.2d 1175, 1184-85 (1981) (holding that a plaintiff's prospects of a professional football career were too speculative to support a lost earnings claim). Thus, Plaintiff must establish, with reasonable probability, that "as a direct and proximate result of the occurrence in question" Plaintiff would be prevented from trying to pursue, or from pursuing, her career. Id. at 115-16, 626 P.2d at 1185.

In Condron v. Harl, 46 Haw. 66, 374 P.2d 613 (1962), the leading case on lost earning capacity, the Hawaii Supreme Court held that lost earnings are not legally awardable as a result of an accident where it resulted from a personal

choice as opposed to a functional disability. The Court held that lost earnings must be based on more than speculation or guesswork. Id.

This principle becomes particularly important when lost future earnings are claimed. In Franco v. Fujimoto, 47 Hawai`i 408, 390 P.2d 740 (1964), the Hawai`i Supreme Court held that lost future earnings are not awardable to a plaintiff who had actually received an increase in pay after the underlying accident. See also Tabieros v. Clark Equipment Co., 85 Hawai`i 336, 391-92, 944 P.2d 1279, 1334-35 (1997) (holding that it was reversible error to admit economist's opinion as to future wage loss where such a claim was not supported by a factual basis).

Against this backdrop, Plaintiff's composition book, Plaintiff's Trial Exhibit No. 58, was of particular importance, where it conclusively established that, except for the six-month period immediately after the Subject Accident, Plaintiff's wages increased after the Subject Accident. Therefore, Plaintiff could not have lost future earnings as a result of the Subject Accident under Hawai`i law. The omission of this crucial exhibit from jury deliberations was clearly prejudicial to Defendant where there was no other credible evidence, beyond self-serving speculation, that Plaintiff would actually sustain a future wage loss in reality.

As set forth above, and giving Plaintiff the benefit of the doubt, the portion of the jury's award reflecting future special damages was at least

$31,452.00. Under these circumstances, the unavailability of Plaintiff's composition book during jury deliberations warrants remittitur in this amount and/or a new trial.

> B.   The Jury's Award of Future Wage Loss was Clearly not Supported by the Evidence and Only Based on Speculation or Guesswork.

Assuming, arguendo, that the omission of Plaintiff's Exhibit No. 58 during jury deliberations does not, in itself, warrant remittitur and/or a new trial, Defendant is nevertheless entitled to remittitur and/or a new trial where the jury's award of future wage loss was contrary to Plaintiff's Exhibit No. 58, and, therefore, clearly not supported by the evidence, and based only on speculation or guesswork.

Again, there was no credible evidence, beyond self-serving speculation by Plaintiff, that Plaintiff would, in actuality, sustain a future wage loss and such speculation was conclusively belied by Plaintiff's Exhibit No. 58, in which Plaintiff, in her own handwriting, detailed how her wages increased after the Subject Accident.

III.   CONCLUSION:

Based on all the foregoing reasons, arguments and authorities, it is respectfully submitted that Defendant is entitled to an order granting a new trial unless Plaintiff accepts a remittitur in the amount of $31,452.00.

DATED: HONOLULU, HAWAII, February 16, 2006

_____
RANDALL Y.S. CHUNG
MELANIE S. MATSUI
Attorneys for Defendant
RACHAEL ROXXANN WILKS
(incorrectly named as
RACHEL STEVENS-VANGORDER)

10