ORIGINAL

LAW OFFICES OF
BRUCE B. KIM

BRUCE B. KIM  #2258
Suite 206, One Kapiolani Building
600 Kapiolani Boulevard
Honolulu, Hawaii 96813
Telephone: (808) 538-7134
Facsimile: (808) 538-7136
E-Mail: kimlaw@pixi.com

LAW OFFICES OF
JANICE P. KIM

JANICE P. KIM #3436
3615 Harding Avenue, Suite 206
Honolulu, Hawaii 96816
Telephone: (808) 732-0522
Facsimile: (808) 735-0459
E-Mail: kimj054@hawaii.rr.com

Attorneys for Plaintiff KATHY TOOZE-AGUIRRE

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 7 2006

at __ o'clock and __ min __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHY TOOZE-AGUIRRE, and DAVID A. AGUIRRE,<br><br>            Plaintiffs,<br><br>vs.<br><br>RACHEL STEVENS-VANGORDER, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE JOINT VENTURES 1-10, DOE CORPORATIONS 1-10, and DOE ENTITIES 1-10,<br><br>            Defendants. | Civil No. 04-00619 BMK<br><br>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST FILED ON FEBRUARY 9, 2006; DECLARATION OF BRUCE B. KIM; EXHIBITS "A" and "C"; CERTIFICATE OF SERVICE<br><br>Date: March 10, 2006<br>Time: 2:00 p.m.<br>Magistrate Judge: Barry M. Kurren<br>Trial Date: January 31, 2006 |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PREJUDGMENT INTEREST FILED ON FEBRUARY 9, 2006

       COMES NOW Plaintiff KATHY TOOZE-AGUIRRE, by and through

her attorneys, BRUCE B. KIM and JANICE P. KIM, and hereby submits

her Reply Memorandum In Support of the Motion for Prejudgment Interest Filed on February 9, 2006, as follows:

      A.    <u>PREJUDGMENT INTEREST IS WARRANTED IN THIS CASE</u>.

Defendant STEVENS-VANGORDER's Memorandum In Opposition to Plaintiff's Motion for Prejudgment Interest reflects a failure to appreciate the actual intent of H.R.S. § 636-16. The Hawaii Supreme Court held in <u>Sussel v. Civil Service Commission</u>, 74 Haw. 599, 618, 851 P.2d 311 (1993), *reconsideration denied*, 74 Haw. 650, 857 P.2d 600 (1993), that prejudgment interest ". . . is essentially compensatory in nature, . . ." In <u>Kalawaia v. AIG Hawaii Insurance Co.</u>, 90 Haw. 167, 172, 977 P.2d 175 (1999), the Court stated that prejudgment interest is an element of complete compensation "'. . . to compensate for the loss of use of money due as damages from the time the claim accrues until the judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'"

Awarding prejudgment interest on compensatory damages "'. . . ensures that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor, and *comprises a sanction wholly separate from any punitive damages awarded.*'" <u>Calleon v. Miyagi</u>, 76 Haw. 310, 322, 876 P.2d 1278 (1994) (plaintiff was entitled to prejudgment interest on his compensatory damage award even though he was also awarded punitive damages).

The purpose of H.R.S. § 636-16 is to ". . . discourage 'recalcitrance and unwarranted delays in cases which should be more speedily resolved.'" Calleon, 76 Haw. at 322. Defendant STEVENS-VANGORDER is wrong to suggest that in order for prejudgment interest to be awarded, KATHY must show purposeful delay on the part of Defendant STEVENS-VANGORDER. Ditto v. McCurdy, 86 Haw. 93, 114, 947 P.2d 961 (App. 1997), *aff'd in part and rev'd in part on other grounds*, 86 Haw. 84, 947 P.2d 952 (1997).

> . . . there need be no demonstration of purposeful delay by the defendant. The trial court has the discretion to award prejudgment interest for any substantial delay in the proceedings. The legislative history of HRS § 636-16 confirms our interpretation of the statute. As the conference committee report explains: 'Where the issuance of a judgment is greatly delayed *for any reason*, such fixed commencement date can result in substantial injustice. Allowing the trial judge to designate the commencement date will permit more equitable results.'
>
> Ditto, 86 Haw. at 114.

The Hawaii Supreme Court has further held that prejudgment interest under H.R.S. § 636-16 ". . . is to be allowed wherever it is properly proved." Sussel, 74 Haw. at 618.

It is now abundantly clear that this case could not be resolved short of trial because of Defendant STEVENS-VANGORDER and her insurer's unrealistic and unjustified assessment of KATHY's injuries and damages. The record reflects that Defendant

STEVENS-VANGORDER and her insurer knew as a certainty shortly after the collision on March 26, 2003 that Defendant STEVENS-VANGORDER was 100% at fault for this serious rear-end collision. A true and correct copy of Page 2 of the State Farm Estimator Fact Sheet dated April 9, 2003 indicating that Defendant STEVENS-VANGORDER was "LOST", "LOOKING UP & DOWN AT A MAP" and "TRAVELLING [sic] AT APPROX 40 MPH" when she rammed into KATHY's vehicle rendering it a total loss is attached to and made a part hereof as Exhibit "A".

The record further reflects questionable to no medical evidence that KATHY was suffering from chronic left-sided lumbar radiculopathy prior to the collision and absolutely no medical evidence that KATHY had either injured her neck or suffered from left-sided cervical radiculopathy at any time prior to being hit by Defendant STEVENS-VANGORDER.

Given the foregoing evidence, it is difficult if not impossible to reconcile Defendant STEVENS-VANGORDER and her insurer's position that they acted reasonably when they:

1) on May 14, 2004, in response to KATHY's formal written policy limit demand, offered KATHY $14,000.00 under Defendant STEVENS-VANGORDER's $100,000.00 BI policy to settle this matter before suit;

2) filed an Answer on October 19, 2004 denying ". . . any and all allegations of negligence and/or carelessness on

[Defendant STEVENS-VANGORDER's] part, . . ." and alleging that KATHY's injuries were attributable to KATHY's own negligence;

3) removed the case from state Circuit Court to this Court thereby avoiding the mandatory CAAP arbitration program;

4) filed an Offer of Judgment for $18,000.00 on June 23, 2005, purportedly due to the apportionment issue even though KATHY had already provided them with a copy of Dr. Peter Diamond's March 2005 PIP IME setting forth his opinions on apportionment as well as income and general excise tax records through 2004, copies of medical treatment records and copies of medical bills up to the time of the second accident in May 2004 which exceeded $29,000.00;

5) forced KATHY to incur substantial litigation costs from the time her Complaint was filed on May 21, 2004, including a four month delay in obtaining service on Defendant STEVENS-VANGORDER in Oregon;

6) forced KATHY to incur significant discovery costs, expert witness fees and trial costs even though they were given copies of all hospital records, treatment records, diagnostic imaging studies, Dr. McNorton's 2003 cervical and lumbar EMG/NCV test results and corresponding medical bills as part of the original demand sent to Defendant STEVENS-VANGORDER's insurer back on March 11, 2004;

7) forced KATHY to incur significant discovery costs,

expert witness fees and trial costs even though they were given a copy of Dr. Dang's complete clinical records dating back to February 22, 2000, by letter dated April 27, 2004, which demonstrated there was no history of injuries to KATHY's neck or any complaints of left-sided cervical radiculopathy prior to the collision and a questionable history of left-sided lumbar radiculopathy;

    8) forced KATHY to incur significant discovery costs, expert witness fees and trial costs even though KATHY voluntarily provided Defendant STEVENS-VANGORDER's insurer by letters dated March 17, 2004 and June 30, 2004 with copies of KATHY's income tax returns for the years 2001 and 2002 verifying her pre-collision income and expenses from her cleaning business, including copies of the Schedule Cs for "Kathy's Helping Hands", and thereafter provided them with additional income tax and general excise tax records from 2001 through 2004 during discovery. True and correct copies of the March and June 2004 letters to Jamie Miranda at State Farm are attached to and made a part hereof as Exhibits "B" and "C";

    9) refused to admit that a single medical bill incurred by KATHY after the collision was caused by the collision; and

    10) refused to admit legal causation through the conclusion of trial despite the opinion of their own defense medical examiner conceding that KATHY had sustained injuries to

her neck and back in the collision.

Unfortunately, the Special Verdict entered on February 3, 2006 proved that Defendant STEVENS-VANGORDER and her insurer's evaluation of the case was completely without merit and there is ample evidence to conclude that they acted unreasonably in failing and refusing to resolve this case short of trial.

As between Defendant STEVENS-VANGORDER and KATHY, Defendant STEVENS-VANGORDER is solely responsible for the significant and unwarranted delay in resolving this matter, including her decisions to remove this case to Federal court and forcing KATHY to trial. Defendant STEVENS-VANGORDER knowingly and intelligently assumed that risk when she decided to wait KATHY out and force her to trial. She should bear the consequences of her decision now that the jury has spoken.

The Court is respectfully requested to grant the Motion for Prejudgment Interest and award KATHY prejudgment interest from the date of the subject collision.

DATED: Honolulu, Hawaii, _____FEB 2 7 2006_____.

_____
BRUCE B. KIM
JANICE P. KIM
Attorneys for KATHY